(C.D. 2338)

HULSE IMPORT CO. ET AL. AND CHINA LIQUOR DISTRIBUTING CO. ET AL.
*v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 7, 1962)

*Lawrence & Tuttle* (*Lawrence A. Harper* and *Abraham Gottfried* of counsel) for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon, Samuel D. Spector*, and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: *Hulse Import Co. et al.* v. *United States*, protest numbers 225123–K, etc., which was tried in New York, N.Y., and *China Liquor Distributing Co. et al.* v. *United States*, protest numbers 58/18398, etc., which was tried in Los Angeles and San Francisco, were consolidated together with all other pending cases involving internal revenue tax on distilled spirits filed by attorneys Lawrence & Tuttle, regardless of port of entry, except two, and were submitted for decision October 30, 1961. The court may have occasion to refer to the records in the two cases that have been tried,

and, when it does, the references to the *Hulse* record will appear as (RH —-) and to the *China* record as (RC —-). Claims are abandoned with respect to entry numbers 1991 and 2147, which were entered before November 1, 1951, and on which only $9 was paid. (RC 28.)

The plaintiffs, in these actions, seek to recover a part of the internal revenue tax paid on distilled spirits at the time of their importation into the United States on and after January 1, 1951, the effective date of the Internal Revenue Act of 1951. All distilled spirits imported were taxed under the act, whether they were whisky, cordials, brandy, gin, or any other alcoholic beverage.

Section 451 of the Internal Revenue Act of 1951 (65 Stat. 524) amended section 2800(a)(1) of the Internal Revenue Code of 1939, as amended (hereinafter referred to as IRC), by increasing the tax assessment on distilled spirits in bond or produced in or imported into the United States from $9 to $10.50 on each proof gallon or wine gallon when belowproof.[1] The plaintiffs protest the action of the collector of customs in collecting the $10.50 tax per wine gallon (as all of the spirits involved in these cases were imported belowproof) contending that, under the General Agreement on Tariffs and Trade (hereinafter referred to as GATT), the importations should be assessed at $9 per gallon on a wine gallon basis under the internal revenue laws in force on January 1, 1948; that the increased charge of $1.50 provided for in the Revenue Act of 1951 should be calculated on a proof gallon basis. Plaintiffs argue that there is a "clash" between GATT and section 2800(a)(1) of the IRC of 1939, as amended (sec. 451 of the Revenue Act of 1951), and that the provisions of the former froze the tax at $9 per wine gallon and should prevail.

The provisions of GATT and IRC, which are placed in issue, are as follows:

Article II 1.(b) of GATT (T.D. 51802) provides as follows:

(b) The products described in Part I of the Schedule relating to any contracting party, which are the products of territories of other contracting parties, shall, on their importation into the territory to which the Schedule relates, and subject to the terms, conditions or qualifications set forth in that Schedule, be exempt from ordinary customs duties in excess of those set forth and provided for therein. *Such products shall also be exempt from all other* duties or *charges* of any kind imposed on or in connection with importation *in excess of those* imposed on the date of this Agreement or those *directly and mandatorily required to be imposed thereafter by legislation in force in the importing territory on that date.* [Italics supplied.]

---

[1] A standard United States gallon contains 231 cubic inches. 26 CFR (1949 ed.), section 186.148. A standard United States gallon containing 50 percent alcohol by volume and 50 percent water by volume would be 100 proof spirits, which gallon of 100 proof spirits is known as a proof gallon. 26 CFR (1949 ed.), section 186.149. The terms "overproof" or "aboveproof" refer to spirits containing more than 50 percent alcohol by volume, whereas the terms "underproof gallon" or "wine gallon" are used to refer to a standard United States gallon, containing less than 50 percent alcohol by volume.

Article II 2.(a) of said GATT, as amended (T.D. 52167), provides:

2. *Nothing in this Article shall prevent any contracting party from imposing at any time on the importation of any product*

(a) *a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product* or in respect of an article from which the imported product has been manufactured or produced in whole or in part; [italics supplied].

Article III 1. and 2. of GATT, as amended (T.D. 52167), provides:

1. *The contracting parties recognize that internal taxes* and other internal charges, and laws, regulations and requirements affecting the internal sale, offering for sale, purchase, transportation, distribution or use of products, and internal quantitative regulations requiring the mixture, processing or use of products in specified amounts or proportions, *should not be applied to imported or domestic products so as to afford protection to domestic production.*

2. *The products of the territory of any contracting party imported into the territory of any other contracting party shall not be subject, directly or indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products.* Moreover, no contracting party shall otherwise apply internal taxes or other internal charges to imported or domestic products in a manner contrary to the principles set forth in paragraph 1. [Italics supplied.]

The Internal Revenue Act of 1951, insofar as is pertinent, provides as follows:

SEC. 451. INCREASE IN TAX ON DISTILLED SPIRITS FROM $9 TO $10.50 PER GALLON.

(a) Distilled spirits generally.—Section 2800(a)(1) is hereby amended by striking out "$6" and inserting in lieu thereof "$10.50", * * *. [The tax of $6 had been increased to $9 by a previous amendment.]

The amendment of 1951, *supra*, also added a new subsection to section 2800 as follows:

(c) Floor stocks tax.—Section 2800 is amended by inserting at the end thereof the following new subsection:

(1) 1951 floor stocks tax.—

(1) Tax.—Upon all distilled spirits upon which the internal revenue tax imposed by law has been paid, and which on the effective date of section 451(a) of the Revenue Act of 1951, are held and intended for sale or for use in the manufacture or production of any article intended for sale, there shall be levied, assessed, collected, and paid a floor stocks tax of $1.50 on each proof-gallon, and a proportionate tax at a like rate on all fractional parts of such proof-gallon.

The amendment of 1951, *supra*, also added a new provision to the internal revenue law, entitled "Treaty Obligations" and known as section 615 (65 Stat. 569). It reads as follows:

SEC. 615.  TREATY OBLIGATIONS.

No amendment made by this Act shall apply in any case where its application would be contrary to any treaty obligation of the United States.

In the course of the trials, the plaintiffs made certain claims under part II, article III of GATT, concerning National Treatment on Internal Taxation and Regulation; and under section 2800(c)(1) of the IRC of 1939, as amended, covering floor taxes. They state, in their brief, that they will not argue these claims, but they do not specifically abandon them. The case of *Bercut-Vandervoort & Co., Inc.* v. *United States*, 46 C.C.P.A. (Customs) 28, C.A.D. 691, hereinafter referred to as the *Bercut* case, clearly established that there was no discrimination as prohibited by article III of GATT, directly or indirectly, against importers of distilled spirits in collecting the internal revenue tax on the wine gallon when they were imported underproof. The court is also of the opinion that the issue decided in the *Bercut* case is not substantially different from the issue raised by the plaintiffs in these cases and that the principle laid down in the *Bercut* case is controlling here. Any discussion of "floor stocks taxes" is irrelevant to the issues in this case. A "floor stocks tax" of $1.50 (the same amount by which the internal revenue tax was increased) was provided for in the Revenue Act of 1951, but the "floor stocks tax" is in no way applicable or related to the internal revenue tax on the imported belowproof distilled spirits in issue.

A reading of the italicized portions of the pertinent provisions of GATT and the pertinent provisions of IRC, as set out above, does not indicate any "clash." In fact, the provisions of GATT and IRC complement each other.

The underlined part of article II 1.(b) of GATT, which provides that such products (distilled spirits) shall be "exempt from all other * * * charges * * * in excess of those imposed * * * by legislation in force in the importing territory on * * *" the effective date of GATT, January 1, 1948, is modified by the underlined portion of article II 2.(a), which permits a contracting party to impose "at any time on the importation of any product (a) a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product * * *."

Article III 1. provides that "The contracting parties recognize that internal taxes * * * and laws * * * should not be applied to imported or domestic products so as to afford protection to domestic production." Article III 2. provides that "The products of the territory of any contracting party imported into the territory of any other contracting party shall not be subject, directly or indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products."

This analysis of the pertinent provisions of GATT indicates that

their objective is to protect imported distilled spirits from any taxes which are not imposed on like domestic products and that an increase in the tax rate is permissible as long as it is applied equally to domestic and imported distilled spirits.

The IRC tax on distilled spirits (domestic and imported) was not the embodiment of a new form of taxation, and the amendment of 1951 merely increased the tax from $9 to $10.50. The plaintiffs, in their brief (p. 22), traced the history of this provision of the IRC, showing how the tax rate rose from $2 to $2.25 in 1938 (52 Stat. 572, 1938, ch. 289, sec. 710); to $3 in 1940 (54 Stat. 524, 1940, ch. 419, sec. 213a); to $4 in 1941 (55 Stat. 708, 1941, ch. 412, sec. 533a); to $6 in 1942 (56 Stat. 970, 1942, ch. 619, sec. 602a); to $9 in 1944 (58 Stat. 61, 1944, ch. 63, sec. 302); and to $10.50 in 1951 (65 Stat. 524, 1951, ch. 521, sec. 451(a)).

Section 615 of the Internal Revenue Act of 1951 provides:

No amendment made by this Act shall apply in any case where its application would be contrary to any treaty obligation of the United States.

Inasmuch as article II 2.(a) of GATT expressly provides for the imposition "at any time" of internal tax on any imported product, if the same internal tax is levied on a like domestic product, the application of section 451 of the Internal Revenue Act of 1951 to the involved distilled spirits is not proscripted by section 615.

Some of the involved cases have been suspended in the Customs Court on three previous occasions under test cases in which the importers were alleging some form of illegal discrimination in favor of domestic producers and against importers of distilled spirits, in which instances, the plaintiffs have been "three time losers." *United States* v. *Rathjen*, 31 C.C.P.A. (Customs) 70, C.A.D. 250; *Vernon Distributing Co.* v. *United States*, 39 C.C.P.A. (Customs) 205, C.A.D. 463; *Bercut-Vandervoort & Co., Inc.* v. *United States*, 46 C.C.P.A. (Customs) 28, C.A.D. 691.

These three cases were appealed to the United States Court of Customs and Patent Appeals and decided in favor of the Government. Following the last decision by the Court of Customs and Patent Appeals, the importer sought certiorari in the Supreme Court of the United States and was denied. The importers represented by counsel, other than Lawrence & Tuttle, in some 5,600 other cases that were suspended under the last test case, the *Bercut* case, have abandoned any claim of discrimination in favor of domestic producers and against importers of distilled spirits in the application of the Internal Revenue Act of 1951.

Plaintiffs presented an impressive array of witnesses from the standpoint of their experience and the volume of distilled spirits handled by them, but their testimony failed to develop any relevant issue that was not decided in the *Bercut* case. These witnesses under-

took to compare bottles of imported whisky, underproof, with bottles of domestic whisky, underproof. Such a comparison is not relevant or material to the issue as the IRC provides for two classes of distilled spirits, whether bottled or in bulk, (1) *underproof foreign spirits when imported* and (2) *underproof domestic spirits when withdrawn from bond*, and treats them equally. The plaintiffs showed, by their witnesses, the blends and alcoholic content of certain imported proprietary brands of scotch, bourbon, gin, cordials, etc., and argued that the burden was on the United States to show a like domestic product on which it imposed the internal revenue tax. Having "a like domestic product" does not require that the United States have an alcoholic beverage having the same name, brand, blend, and alcoholic content of each foreign alcoholic beverage imported, before it can impose the internal revenue tax. If this were so, all a foreign distiller would have to do would be vary the composition of his particular distilled spirits a little from the exact composition of like distilled spirits in the United States, and he would not have to pay any tax. The IRC is not concerned with brands and blends of distilled spirits, but only with whether such spirits are proof or underproof. Also, the fact that the foreign spirits from which the imported bottled goods came were overproof is immaterial. The question is, in what condition were the foreign distilled spirits when they were imported? In these cases, they were all underproof, and the collector properly assessed the duty.

For the reasons stated, the protests are overruled. Judgment will be rendered accordingly.

## CONCURRING OPINION

DONLON, Judge: I agree with my colleagues that the issues here presented and the record plaintiffs have developed are not *substantially* different from the issues and record in *Bercut-Vandervoort & Co., Inc.* v. *United States*, 46 C.C.P.A. (Customs) 28, C.A.D. 691.

It was my opinion, when the *Bercut* case was before us, that there might have been such an indirect discrimination in internal taxation as GATT prohibits. Hence, I held the view then that the record in that case should be developed, in order that there might be a decision of the court as to whether or not there had been a prohibited indirect discrimination.

Two points call for mention. Plaintiffs have had their opportunity to develop the record. The facts before us do not show anything material to the issue that was not before us in the *Bercut* case.

Secondly, our appeals court, in the *Bercut* case, *supra*, effectively disposed of the issue of *indirect* discrimination in the assessment of internal revenue tax on such liquors as these. The court held that the collector *cannot* do by indirection what he cannot do directly,

and that this is so in the context in which the word "indirectly" is used in GATT. Hence, the law issue has been adjudicated.

For the reasons stated, I concur that the protests should be overruled.