(C. D. 2586)

CHICAGO HEIGHTS DISTRIBUTING COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 3, 1965)

*Wallace & Schwartz* (*Joseph Schwartz* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Herbert L. Warren* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: The merchandise of this protest consists of three lots of Scotch whiskey which were imported at Chicago, Ill., from Scotland. The merchandise was stolen while in the custody of a

bonded cartman who was acting as the importer's agent in transferring the merchandise from the place of unlading to the importer's bonded warehouse. The question before this court is whether plaintiff is entitled to a refund of customs duties and internal revenue taxes assessed upon this merchandise in liquidation.

Some of the pertinent facts involved in this controversy have been stipulated by the parties, as follows:

The merchandise covered by warehouse entry 7060 consisted of 295 cartons of Scotch whisky in bottles and flasks which arrived in Chicago on or about November 4, 1960, and which was the subject of warehouse entry bond executed on November 4, 1960, by Chicago Heights Distributing Company as principal and St. Paul Mercury Insurance Company as surety. The merchandise covered by entry No. 6876 consisted of 496 cases of Scotch whisky in bottles and flasks which arrived in Chicago on or about October 24, 1960, and which was the subject of warehouse entry bond executed on October 21, 1960, by Chicago Heights Distributing Company as principal and St. Paul Mercury Insurance Company as surety. The merchandise covered by warehouse entry 6857 consisted of 100 cartons of Scotch whisky in bottles which arrived in Chicago on or about October 24, 1960, and which was the subject of warehouse entry bond executed on October 20, 1960, by Chicago Heights Distributing Company as principal and St. Paul Mercury Insurance Company as surety.

While still under bond and in customs custody the merchandise was loaded on a bonded truck of a bonded cartman (an agent of the importer) on or about November 4, 1960, for delivery to the bonded warehouse of Chicago Heights Distributing Company, Chicago Heights, Ill.

On route to the bonded warehouse of Chicago Heights Distributing Company the merchandise was stolen from the truck while still in bond and in customs custody.

The merchandise was never delivered to the bonded warehouse and was never withdrawn from bond and was never delivered to the importer.

The bonded cartman paid the sum of $5,000 to the United States Government for failure to deliver the merchandise to the importer, said amount being the full penalty of the bond filed by said cartman.

The collector found that the theft occurred without connivance, collusion, or fraud on the part of the distiller, warehouseman, owner, consignor, consignee, bailee, or carrier, or the employees of any of them [collector of customs].

No duties or taxes have been collected except the sum of $5,000 paid by the cartman, which sum has been applied as follows:

Warehouse entry 7060, $916.91 in duties.
Warehouse entry 6876, $1,576.44 in duties.
Warehouse entry 6857, $306.10 in duties. And
warehouse entry 6857, the same one, $2,200.55 in taxes.

No claim for relief from the tax has been filed with the collector of customs except two protests filed with the collector of customs, namely the instant protest and Protest 61/2070–12086 which has been abandoned.

On the question of negligence, testimony was adduced from two witnesses, namely, Bernard A. Meiners, assistant collector of customs

at Chicago, and David Holden, president of Pick Up and Deliver, Inc., the bonded cartman in this case. Regarding an investigation conducted by the collector in the matter, Mr. Meiners stated:

A. There was an investigation in this case to determine the cartman's responsibility. And we determined that he was negligent. And we informed him so in a meeting we held in our office. And subsequently we made demand on his bond, and the customs agency service made a report which indicated negligence. We required no further proof. [R. 12.]

The witness also testified, among other things, that the collector required no claim for relief from the tax or submission of proof of loss to be filed because relief was sought under section 514 of the tariff act (protest), and that since the investigation clearly showed negligence on the part of the cartman and no one else, further inquiry would have been fruitless.

Mr. Holden testified that the goods were loaded on Veterans Day, a Friday, in November 1960, but were not delivered "because there was no customs inspector to refer it in the bonded warehouse"; that it "had to be left at the other dock over there until the following day to be delivered" to Chicago Heights Distributing Co.; that one of his drivers picked up the load which came into his premises some time between 4 and 6 o'clock in the afternoon; and that the trailer was locked and sealed.

The witness also testified that it "was left there with the guard overnight. And the following day—and I myself saw the trailer about a quarter to twelve the following day" and "I went back at one o'clock and it was gone"; that between a quarter to twelve and 1 o'clock he was at the Navy Pier where he went, as he recalled it, to pick up some papers for another bonded shipment. Mr. Holden stated that he did not leave the trailer unattended, but there was a guard there at all times, as he recalled it; that the guard was his father, who is no longer alive; that when he came back, the trailer was gone, it had been pulled away, even though this was in the middle of the day in broad daylight; and that the guard, his father, said he was not there at the time this was done, "He was getting himself a sandwich, he said."

It was brought out on further examination of the witness that the restaurant where the guard had gone to was about a block and a half away from the place where the trailer was parked; that customs, the F.B.I., and the Chicago police were notified of the theft; that a spray can was found near where the trailer had been; and that the trailer was not attached to a cart just prior to the theft, leading the witness to surmise that somebody or bodies had removed the numbers from the trailer with paint and removed the trailer with another tractor which could very quickly be attached to the trailer.

Concerning the witness' customary practices, it was brought out that he normally would not have such a valuable cargo as the involved merchandise on his premises, that, with respect to the involved merchandise, he took extra precautions by engaging a guard to watch it, and that he did not usually do this with general cargo which remained on the premises, generally leaving it to the railroad police who patroled the area, to watch it. According to the witness, the condition of the trailer was such that it was locked and sealed; that there was nothing about it to indicate that it was loaded with liquor; and that he knew of no thefts occurring in the area at that time.

Mr. Holden also testified that the merchandise was not delivered on Armistice Day because customs men do not work at the warehouse on holidays or weekends; that if Armistice Day was a Friday, he had to leave the truck on his premises Thursday night, Friday, Saturday, and Sunday; that he had to load the truck when customs told him to do so, which was late in the day; and that he was not aware that he could have requested the services of a customs man, but did not believe it was up to him to make such a request.

Mr. Meiners was recalled and testified that "If there had been a request we would have provided an officer on an overtime basis to receive the merchandise at Chicago Heights."

Plaintiff contends that on the evidence of record it is entitled to an abatement of duties and taxes assessed against the stolen merchandise, because the theft occurred without negligence on the part of the cartman, relying upon 19 U.S.C.A., section 1001, paragraph 813 (paragraph 813, Tariff Act of 1930), as amended, and 26 U.S.C.A., section 5011 (section 5011, Internal Revenue Code of 1954), in support of its contention. Defendant contends that there are no provisions of the customs or internal revenue laws authorizing abatement of duties and taxes as claimed by plaintiff, and that even if there were such laws, the negligence of the cartman, as disclosed in the evidence, precludes abatement as a matter of law.

We have examined the statutes cited by counsel in support of their respective contentions. It appears that no statutory provisions have been made for the abatement of duties for a theft of imported merchandise not occurring while the merchandise is in the appraiser's stores (see 19 U.S.C.A., section 1563). "Congress has not provided that the Government shall be an insurer of imported goods while in customs custody . . .," *Mills & Gibb Corporation* v. *United States*, 13 Ct. Cust. Appls. 72, 74, T.D. 40933. A broader provision for such relief does exist, however, with respect to abatement of internal revenue taxes by reason of the theft of distilled spirits under 26 U.S.C.A., section 5008 (section 5008, Internal Revenue Code of 1954, as

amended). Section 5008, which supersedes section 5011, reads in relevant part as follows:

§ 5008. Abatement, remission, refund, and allowance for loss or destruction of distilled spirits

(a) Distilled spirits lost or destroyed in bond.—

(1) Extent of loss allowance.—No tax shall be collected in respect of distilled spirits lost or destroyed while in bond, except that such tax shall be collected—

(A) Theft.—In the case of loss by theft, unless the Secretary or his delegate finds that the theft occurred without connivance, collusion, fraud, or negligence on the part of the proprietor of the distilled spirits plant, owner, consignor, or consignee, bailee, or carrier, or the employees or agents of any of them; . . . .

We do not think that section 5008 is applicable, however, to customs duties as claimed by plaintiff perforce of paragraph 813. It appears that paragraph 813, as amended by Public Law 612 in 1948, had as its object the equalization of quantities of alcoholic beverages imported into this country for duty and tax assessment purposes. This object is expressed in the recommendation made by the House Ways and Means Committee Report for passage of the bill in the following language:

Enactment of the bill would eliminate the discrimination against liquors as compared with the procedures followed in determining the dutiable quantities of other commodities, in that it would permit allowance for losses occurring while the liquor was in transit to the United States. In addition, it would permit allowance for losses occurring after importation but before the goods had been released from bond for consumption. [2 U.S. Code Cong. Serv., p. 1712 (1948).]

Both the statute and the legislative purpose address themselves to the matter of the imposition of duties and taxes, and not at all to the matter of abatement of duties and taxes.

Neither do we think that the provisions of section 5008 are limited as contended for by defendant only to domestically produced distilled spirits. Section 5008 must be read in conjunction with other provisions of subpart A in order to ascertain the scope of its application. Section 5001(a)(1) states: "There is hereby imposed on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $10.50 on each proof gallon or wine gallon when below proof . . . ." Section 5005 imposes liability for the tax on the "distiller or importer of distilled spirits." And section 5008 establishes the occasions when relief from the payment of the tax will be granted. In order to permit of the construction of section 5008, which defendant argues for, words of limitation would have had to be employed in that statute, in view of the all-embracing language used in other parts of subpart A, as aforementioned. In the absence

of such delimiting language, the court cannot construe section 5008 as having application only to domestically produced liquors. Neither did the collector of customs so construe this statutory language in the case at bar. The collector made determinations of the facts expressly as provided for in section 5008. And if the importer is entitled to any relief at all, in our opinion, it is to this statute to which the court must look to determine whether plaintiff is entitled to an abatement on internal revenue taxes assessed against the involved merchandise.

That this court possesses jurisdiction to consider the issues raised under an internal revenue statute in a protest proceeding is implicit in the holdings in *Westco Liquor Products Co.* v. *United States*, 24 Cust. Ct. 120, C.D. 1219, affirmed, *United States* v. *Westco Liquor Products Co.*, 38 CCPA 101, C.A.D. 446; *Hulse Import Co. et al.* and *China Liquor Distributing Co. et al.* v. *United States*, 48 Cust. Ct. 217, C.D. 2338, affirmed, C.A.D. 847, certiorari denied, 380 U.S. 962, wherein it was held that internal revenue tax on distilled spirits is a customs duty for collection purposes and subject to the customs laws governing the assessment and collection of duty. In the instant case, we are dealing with the collection of the tax. It is not a case which comes within the prohibition of 19 U.S.C.A., section 1528 (section 528, Tariff Act of 1930, as added by the Customs Administrative Act of 1938), such as a preference or exemption under customs laws which is sought to be extended to an internal revenue tax, in which case the proscriptive measures of section 1528 should properly be invoked. *Westco Liquor Products Co.* v. *United States*, *supra*, and *United States* v. *Westco Liquor Products Co.*, *supra*. On the contrary, the exemption with which we are here concerned exists under the revenue laws and not under the customs laws, and, hence, is not reached or intended to be affected by section 1528.

Thus, the issue which we must decide is whether the theft of the involved merchandise was caused by or contributed to by negligence on the part of the cartman. Although the record upon which the collector made his determination on this issue is not before us, considering the matter *de novo* upon the evidence adduced in the instant record, we are inclined to reach the same conclusion as did the collector. It does not appear of record that the cartman notified either the importer or the customs officials of his inability to effect delivery, with a request for further instructions as to what to do with the merchandise. This, we think, is a minimum standard of care to be expected from any prudent person confronted with such a situation as the cartman was faced with, whether or not such a person was aware of customs regulations making provision for afterhour deliveries (see § 19.5, Customs Regulations).

And then, having taken upon himself the responsibility for safe-keeping of the merchandise over the long holiday weekend following his inability to effect delivery, the cartman was obliged to take such precautions as would be necessary to keep such a valuable cargo from falling into the wrong hands. This, in our view, would entail arrangements for the continuous, uninterrupted surveillance of the trailer involving possibly more than just one person, considering the necessities of life which require people to occasionally absent themselves from their posts of duty. This was not done, according to the evidence before us. Therefore, under all of the circumstances, we must and do conclude that the cartman was negligent in handling the involved merchandise, and that his negligence contributed to the loss of the merchandise by reason of theft. Such a finding precludes abatement of the internal revenue taxes assessed against the subject merchandise.

Also, the president of the transport company said he did not know whether or not the importer was insured against the Government's claim for duties and taxes. Section 5008(4) of the Internal Revenue Code provides:

. . . The abatement, remission, credit, or refund of taxes provided for by paragraphs (1) and (3) in the case of loss of distilled spirits by theft shall only be allowed to the extent that the claimant is not indemnified against or recompensed in respect of the tax for such loss.

The protest is overruled. Judgment will be entered accordingly.

### CONCURRING OPINION

Donlon, Judge: The only one of plaintiff's four protest claims that was argued is a claim added by amendment in open court, as follows:

* * * that no duty or internal revenue tax should be assessed on merchandise which was not delivered to the importer. [R. 2.]

The record clearly negatives the asserted fact on which plaintiff bases its claim. It is shown that the hijacked liquor had been imported. It was delivered out of customs custody to a carrier, conceded by plaintiff's counsel to be the importer's agent. (R. 4.) Receipt by an agent authorized to carry the merchandise is delivery to his principal. This is a proposition too well settled in the law to require citation of authority.

This liquor had crossed the customs line before the hijacking.

Therefore, even if plaintiff were to prevail on the law, and it is my opinion that it cannot prevail, the protest before us would not permit recovery in the light of the facts that have been shown. There is before us no merchandise such as the protest claim describes as not having been delivered to the importer.